UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 3:10-CV-00578-J-32MCR

KIRHY SMITH,

        Plaintiff,

vs.                                       **DISPOSITIVE MOTION**

RICK BESELER, in his official capacity as Sheriff
of Clay County, Florida; DANILO MATOS, in his
individual capacity,

        Defendants.
_____/

### **DEFENDANT, DANILO MATOS', MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING MEMORANDUM OF LAW**

COMES NOW, the Defendant, Danilo Matos, by and through his undersigned attorneys, pursuant to *Rule 56, Federal Rules of Civil Procedure*, and moves this Honorable Court for the entry of an order granting him summary judgment and in support thereof states as follows:

1.      This cause of action arises out of the Plaintiff, Kirhy Smith's, October 10, 2008, arrest for robbery.

2.      On July 2, 2010, Plaintiff filed his Complaint and Demand for Jury Trial (Doc 1).

3.      In his Complaint, the Plaintiff asserts one count against Detective Matos, pursuant to 42 U.S.C. § 1983, for unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution.  (Doc 1, pp. 6-7).

Although the Plaintiff references both the Fourth and Fourteenth Amendments to the Constitution, it is clear that Plaintiff's claim against Detective Matos should be analyzed under the Fourth Amendment's reasonableness standard.  The Fourteenth Amendment's due process requirement is not implicated under the facts of this case.[1]

4.      Plaintiff's arrest was made pursuant to a lawfully issued Juvenile Pick-up Order supported by probable cause.  A juvenile pick-up order is the functional equivalent to an arrest warrant for an adult.

5.      The undisputed material facts show that Detective Matos did not make any knowingly false statements or omit any material facts in obtaining the Juvenile Pick-up Order.  Detective Matos is entitled to qualified immunity because there was arguable probable cause for Mr. Smith's arrest.  Thus, summary judgment should be granted in favor of Detective Matos as a matter of law.

## I.      Plaintiff's Allegations

In support of his 42 U.S.C. § 1983 claim against Detective Matos, the Plaintiff alleges that: "Defendant Matos knowingly and deliberately, or with reckless disregard to the truth, made false statements or material omissions in his application for the warrant for Mr. Smith's arrest, and such statements or omissions were necessary to the finding of probable cause to issue said warrant."

---

[1] The Fourteenth Amendment does not protect against all deprivations of liberty only against deprivations without due process of law. A defendant executing an arrest warrant is not required by the Constitution to investigate every claim of innocence or to perform an error-free investigation. *See Baker v. McCollan*, 443 U.S. 137, 145-146 (U.S. 1979).

II.     <u>**Undisputed Material Facts**</u>

On August 7, 2008, Deputy Llewellyn of the Clay County Sheriff's Office responded to a report of a robbery in progress in the 400 Block of Sigsbee Road, Orange Park, Florida. (Doc 1, ¶ 7; <u>Exhibit A</u>; Matos Affidavit, ¶5).  The victim of the crime, Ryan Maynard, was violently robbed by two suspects while riding his bicycle. (Exhibit A; Matos Affidavit, ¶ 5).  Deputy Llewellyn met with Mr. Maynard who advised him that he was riding his bicycle in the 400 block of Sigsbee Street when he noticed "two white males (suspects) wearing dark clothing standing on the sidewalk." Exhibit A.  The two suspects ran up to Mr. Maynard and struck him on top of his head with a closed fist. (Exhibit A; Exhibit B).  According to Deputy Llewellyn's report, Mr. Maynard initially described his assailants as "white males, approximately 5-10, 165 lbs, both wearing black pants, & and black hooded shirts." (Doc 1, ¶¶ 9-10; Exhibit A). Both assailants had bandanas over their faces. (Doc 1, ¶ 10; Exhibit A). Mr. Maynard provided a sworn statement detailing the incident.  (Exhibit B). [2]

On August 8, 2008, the case was assigned to Detective Matos for further investigation.  (Doc 1, ¶¶ 11-12; Matos Affidavit, ¶¶ 4-5).  Detective Matos has worked in the Investigations Section of the Clay County Sheriff's Office since 2004. (Matos Affidavit, ¶ 4).  In addition to his generalized law enforcement training, Detective Matos also received specialized training relating to his investigative work on topics such as interviews, interrogations and injury and death investigation.   (Matos Affidavit, ¶ 3). When the case was initially assigned to him, Detective Matos received a copy of the

---

[2] It is important to note that Mr. Maynard's sworn statement does not describe the race of the two suspects.

Incident Report prepared by Deputy Llewellyn. (Matos Affidavit, ¶ 7).  A few days later, Detective Matos received a copy of Mr. Maynard's sworn written statement. (Matos Affidavit, ¶ 7)

During the course of his investigation, Detective Matos interviewed Mr. Maynard. (Matos Affidavit, ¶ 8). The interview lasted somewhere between thirty to forty minutes. (Matos Affidavit, ¶ 8).  Several times during the course of the interview, Detective Matos asked Mr. Maynard to describe the suspects in as much detail as possible. (Matos Affidavit, ¶ 9).  Mr. Maynard provided Detective Matos with a detailed description of the two suspects. (Matos Affidavit, ¶ 9). Mr. Maynard could only say with certainty that one of the suspects was white.  (Matos Affidavit, ¶ 9).  Mr. Maynard could not identify the race of the second suspect. (Matos Affidavit, ¶ 9). Where Mr. Maynard was detailed in his description, Detective Matos felt no need to question Mr. Maynard about the inconsistency concerning the suspect's race that appeared in Deputy Llewellyn's report. (Matos Affidavit, ¶ 9). In the past, Detective Matos has seen a victim describe a suspect as one race and it turns out that the suspect is actually another race. (Matos Affidavit, ¶ 9).  Furthermore, Detective Matos has seen discrepancies in the information provided by the victim and the information contained within a report. (Matos Affidavit, ¶ 9).

During the course of his investigation, Detective Matos canvassed the neighborhood where the incident occurred and met with potential witnesses. (Matos Affidavit, ¶ 10).  Detective Matos also conducted pawn shop database research to determine if anyone had attempted to pawn Mr. Maynard's bicycle. (Matos Affidavit, ¶ 10).  Detective Matos prepared a supplemental report documenting his investigative

efforts, which included the description of the suspects provided by Mr. Maynard during his interview.  (Exhibit C).

On August 24, 2008, Detective Matos was contacted by Sergeant Jett.  Sergeant Jett informed Detective Matos that there was an individual in custody for an auto burglary who indicated that he had witnessed the robbery. (Doc 1, ¶¶ 13-14; Matos Affidavit, ¶ 11). Detective Matos responded to the Orange Park Operation Center to interview the individual, Christopher Palmer.  (Matos Affidavit, ¶12).  Prior to interviewing Mr. Palmer, Detective Matos met with Sergeant Robbins, who quickly briefed him on Mr. Palmer's arrest and his criminal history. (Matos Affidavit, ¶12). After being briefed, Detective Matos interviewed Mr. Palmer.  (Matos Affidavit, ¶ 12).

Mr. Palmer was able to provide specific details about the crime and who did it. (Doc 1, ¶¶ 15-16; Matos Affidavit, ¶ 13).  Mr. Palmer stated that he was in the area of Sigsbee Road between 3:00 a.m. and 4:00 a.m. on the morning of the robbery, visiting a friend who lived in the area. (Matos Affidavit, ¶ 13).  When he left his friend's house, Mr. Palmer was approached by two males. (Matos Affidavit, ¶ 13).  Mr. Palmer knew one of the males, who he identified as Kirhy Smith.[3]  (Matos Affidavit, ¶ 13).  Mr. Palmer described Kirhy Smith as a 5' 10" black male with a muscular build. (Matos Affidavit, ¶13-14).  Mr. Palmer told Detective Matos that he knew Kirhy Smith from Orange Park High School and that they had attended several of the same social gatherings or parties. (Matos Affidavit, ¶ 14). Mr. Palmer said he drank alcohol and smoked cannabis with Kirhy Smith in the past. (Matos Affidavit, ¶ 14).  Prior to the

---

[3] Although Mr. Smith and Mr. Palmer both attended Orange Park High School at one point in time, Mr. Smith denied knowing Mr. Palmer. (Depo Smith, p 82).

morning of the robbery, Mr. Palmer had never met the second individual, who he knew only as "Shocker". (Matos Affidavit, ¶ 13).  Mr. Palmer described Shocker as having brown hair with low cut sideburns, beard and a goatee. (Matos Affidavit, ¶ 15).

Mr. Palmer stated that as soon as the victim passed by on his bicycle, Kirhy Smith and Shocker chased after him.  (Matos Affidavit, ¶ 15).  Christopher Palmer started walking away when he heard the bicycle crash to the ground and the victim yell either "ow" or "ouch".  (Matos Affidavit, ¶ 15).  Approximately three minutes later, Kirhy Smith approached Mr. Palmer riding the victim's bicycle. (Matos Affidavit, ¶ 15).  Mr. Palmer was described the bicycle as a blue beach cruiser. (Matos Affidavit, ¶ 15).  Mr. Palmer's recitation of how the crime occurred and his description of the victim's bicycle were consistent with the victim's report.  (Matos Affidavit, ¶ 15).

During the interview Detective Matos questioned Mr. Palmer about his possible involvement in the offense, given his detailed knowledge about the incident. (Matos Affidavit, ¶ 17).  Mr. Palmer adamantly denied any involvement in the robbery.  (Matos Affidavit, ¶ 15). Mr. Palmer said he merely witnessed what happened. (Matos Affidavit, ¶ 15). Detective Matos had no reason to question the truthfulness of what Mr. Palmer was telling him. (Matos Affidavit, ¶ 18). Detective Matos never promised Mr. Palmer anything in return for his testimony.  (Matos Affidavit, ¶ 18). Detective Matos did not know of any motive Mr. Palmer would have to wrongfully accuse Kirhy Smith of committing this crime. (Matos Affidavit, ¶ 18). Upon the conclusion of his interview, Detective Matos showed Mr. Palmer a copy of Kirhy Smith's Florida driver license photo. (Matos Affidavit, ¶ 19).  Mr. Smith confirmed that he was the same individual

who committed the crime. (Matos Affidavit, ¶ 19).  Detective Matos obtained a sworn written statement from Mr. Palmer. (Exhibit D).

Detective Matos had a background check conducted on Kirhy Smith, which revealed that Mr. Smith was no stranger to the law.  Detective Matos learned that Mr. Smith was previously arrested and pled guilty to a charge of accessory to an armed robbery. (Matos Affidavit, ¶ 20).[4]  On September 25, 2008, Detective Matos met with Assistant State Attorney James Boyle to obtain a Juvenile Pick-Up Order for Kirhy Smith. (Matos Affidavit, ¶ 21).  ASA Boyle and Detective Matos presented the Juvenile Pick-Up Order to a Judge who reviewed and signed the Order.  (Exhibit E).  On October 10, 2008, a school resource officer arrested Kirhy Smith pursuant to the Juvenile Pick-up Order.[5]  (Matos Affidavit, ¶ 23).  The school resource officer who placed Mr. Smith under arrest was a Duval County Sheriff's deputy. (Depo Smith, p 94, lines 20-25).

After his arrest, Kirhy Smith voluntarily agreed to be interviewed by Detective Matos without the appearance of counsel. (Exhibit F).  During the interview, Mr. Smith denied any involvement in the robbery.  Mr. Smith also denied knowing anyone named Christopher Palmer. (Depo Smith, p 82).  After his October 10, 2008 arrest, Mr. Smith was evaluated by the Juvenile Detention Center to see if he was eligible for home confinement. (Depo Smith, p 112, lines 5-9).  Because of his criminal history, Mr. Smith was not eligible for home confinement. (Depo Smith, p 112, ln 15-20).  Mr.

---

[4] Mr. Smith was also recently arrested and charged with fleeing and eluding a law enforcement officer, driving while license suspended, and possession of under 20 grams of cannabis. (Depo Smith, p. 121- 122).
[5] Detective Matos did not physically arrest Mr. Smith. Mr. Smith was arrested by a Duval County Sheriff's deputy. (Smith Depo, pp. 91-92)

Smith was detained at the Juvenile Detention Center for four (4) days. (Depo Smith, p 112, ln 21 - p 113, ln 21).[6]

## III.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment shall be granted "if the movant shows that there exists no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. Although the burden of establishing that there is no genuine issue of material fact lies with the moving party, the non-moving party, so long as that party has had ample opportunity to conduct discovery, must come forward with affirmative evidence to support his claim. *See Celotex v. Catrett*, 477 U.S. 317, 326 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F. 2d 1573, 1577 (11th Cir. 1990).  The non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial; this burden is not satisfied with "some metaphysical doubt as to the material facts," by "unsubstantiated assertions," or by only a "scintilla" of evidence. *Matsuscahita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).

---

[6] "[A]n unreasonable or negligent refusal to investigate claims of innocence or mistaken identity of an individual detained pursuant to a facially-valid warrant for a few days does not amount to a Constitutional violation." *Carter v. City of Lake Mary*, 2005 U.S. Dist. LEXIS 28395 (M.D. Fla. 2005) (citations omitted).

**IV.** **Even When The Facts Are Viewed In A Light Most Favorable To The Plaintiff, They Cannot Strip Away Detective Matos' Entitlement To Qualified Immunity**

    **A.** **Qualified Immunity Protects Detective Matos Because He Was Acting Within His Discretionary Authority When He Obtained The Juvenile Pick-Up Order For The Plaintiff's Arrest**

Qualified immunity allows government officials to perform their discretionary duties "without the fear of personal liability or harassing litigation" and protects from suit "all but the plainly incompetent." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003).  Once a defendant has established that he was acting within his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009).  An officer is acting within his discretionary authority if he is "performing a legitimate job-related function . . . through means that were within his power to utilize." *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

"When evaluating a claim for qualified immunity, a court must determine (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right, and (2) whether, under the facts alleged, there was a violation of "clearly established law." *Williams v. Santana*, 340 Fed. Appx. 614, 617 (11th Cir. Fla. 2009)(citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 820-821, 172 L. Ed. 2d 565 (2009).  "Courts are no longer required to address the two prongs of this test in any particular order." *Id.* (citing *Pearson*, 129 S. Ct. at 820-21, 172 L.Ed.2d 565 (2009)(modifying *Saucier v. Katz,* 533 U.S. 194 (2001)).  When conducting a qualified immunity analysis at the summary judgment stage, a court "must take the facts

in the light most favorable to the party asserting the injury." *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005) (citing *Saucier*, 533 U.S. at 201).   Thus, disputed issues of material fact will not prevent the court from granting summary judgment, as it has the plaintiff's best case in hand.   *Baltimore v. City of Albany*, 183 Fed. Appx. 891, 896 (11th Cir. 2006).

It is undisputed that Detective Matos was a sworn member of the Clay County Sheriff's Office acting under color of state law. (Doc 1, ¶6).   It is abundantly clear that Detective Matos was acting within the scope of his discretionary authority as a Detective with the Clay County Sheriff's Office when he obtained the Juvenile Pick-up Order for the Mr. Smith's arrest.   Therefore, Detective Matos is entitled to qualified immunity so long as his actions did not abridge any of the Mr. Smith's clearly established constitutional rights.

### B.    The Juvenile Pick-Up Order Was Supported By Probable Cause

The Fourth Amendment to the United States Constitution protects against unreasonable seizures and requires that *no warrant be issued without probable cause*. (*emphasis added*). "The Fourth Amendment allows warrants to issue on probable cause, *a standard well short of absolute certainty*." *L.A. County v. Rettele*, 550 U.S. 609, 616 (U.S. 2007)(*emphasis added*).   The Eleventh Circuit has repeatedly held that probable cause exists when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing,

or is about to commit an offense.  *Rankin*, 133 F.3d at 1435 (11th Cir. 1998); *Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997); *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997); *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995); *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990. An arrest made with probable cause is an absolute bar to a § 1983 false arrest claim.

Probable cause does not require overwhelmingly convincing evidence, but only "reasonably trustworthy information." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996).  Probable cause "must be adjudged not with clinical detachment, but with a common sense view to the realities of a normal life." *Wilson v. Attaway*, 757 F.2d 1227, 1235 (11th Cir. 1985)(citing, *U.S. v. Herzbrun*, 723 F.2d 773, 775 (11th Cir.1984)). Probable cause does not require convincing proof and "need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Lee v. Farraro*, 284 F. 3d 1188, 1195 (11th Cir. 2002).  The ultimate guilt or innocence of an individual is irrelevant to the right, even the obligation, of the police to make an arrest, if the officer's investigation reasonably convinces him that a party has committed a felony.  *Collins v. City of Miami*, 881 So. 2d 565 (Fla. 3rd DCA 2004).  Furthermore, when officers execute a valid warrant, the Fourth Amendment is not violated. *Rettele*, 550 U.S. at 616; *Williams v. Miami-Dade Police Dep't*, 297 Fed. Appx. 941, 946 (11th Cir. 2008); *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004); *Ortega*, 85 F.3d at 1525.

Although the undisputed evidence of record shows that probable cause in fact existed for Mr. Smith's arrest, when a police officer, such as Detective Matos, asserts

qualified immunity the issue is not whether probable cause existed in fact, but whether the officer had "arguable" probable cause to make the arrest. *Hardy, v. Broward County Sheriff's Office*, 238 Fed. Appx. 435, 440-441 (11th Cir. 2007); *Wood v. Kesler*, 323 F. 3d 872, 878 (11th Cir. 2003).

Detective Matos reasonably believed that he had actual probable cause for Plaintiff's arrest. A purported eyewitness to the crime, Mr. Palmer, was able to provide detailed information about the crime without any prompting. The information provided by Mr. Palmer was consistent with the victim's report. Mr. Palmer knew when and where the robbery took place and the number of suspects involved. Additionally, Mr. Palmer was able to provide a detailed description of the victim and the bicycle he was riding. Detective Matos had no reason to question the veracity of the information provided by Mr. Palmer. Mr. Palmer was not a suspect in the robbery of Mr. Maynard. Mr. Palmer was not promised anything in exchange for implicating Mr. Smith.

There was also no reason for Detective Matos to question Mr. Palmer's identification of Mr. Smith as one of the individuals involved. Mr. Palmer indicated that he personally knew Mr. Smith for over a year. Mr. Palmer confirmed Mr. Smith's identity when shown his Florida drivers license picture. Generally, an officer is entitled to rely on witnesses and victims criminal reports in support of probable cause for an arrest. *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. Fla. 1998). The undisputed material facts clearly demonstrate that there was ample probable cause to support the court's issuance of the Juvenile Pick-up Order.

C.   **Detective Matos Did Not Make Any Knowingly False Statements or**
     **Material Omissions In Obtaining The Juvenile Pick-Up Order**

"[T]he Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest . . . if such false statements were necessary to the probable cause." *Hyland v. Sec'y for the Dep't of Corr.*, 2007 U.S. App. LEXIS 20745 (11th Cir. Fla. 2007)(citing, *Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999). However, a "warrant is valid if, absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause." *Fox v. Graff*, 276 Fed. Appx. 936, 939 (11th Cir. Fla. 2008)(citing, *Dahl*, 312 F.3d at 1235). Omissions that are only negligent or that are insignificant and immaterial will not invalidate a warrant. *United States v. Reid*, 69 F.3d 1109, 1114 (11th Cir. 1995). There is no evidence to support the Plaintiff's blanket allegation that Detective Matos made any knowingly false statements or material omissions in support of the Juvenile Pick-up Order.

The Plaintiff relies on minor inconsistencies in the descriptions of the suspects to support his claim.[7] These inconsistencies include the race of both suspects being listed as white in the responding officer's initial report, and some minor discrepancies concerning the clothing the suspects had on, such as the color of the bandanas that the suspects had over their faces and whether one of the suspects was wearing shorts, as opposed to pants. The Eleventh Circuit has consistently held that "in the face of many similarities, one material difference will not transform a reasonable arrest into an unreasonable one."

_____

[7] It is important to note, when providing his detailed description of the suspects, Mr. Maynard did not indicate the race of the second perpetrator as a white male. It is also important to note that both perpetrators had bandanas covering their faces.

*Chapman v. City of Atlanta*, 192 Fed. Appx. 922, 924 (11th Cir. 2006); *see also Rodriguez v. Farrell*, 280 F.3d 1341, 1347-1348 (11th Cir. 2002)(same).  Thus, it stands to reason that in the light of so many material similarities between the report of the victim and the information provided by the purported eyewitness, Mr. Palmer, the complained about inconsistencies could not defeat the probable cause that existed.

In *Chapman*, custom officials at the Hartsfield-Jackson Airport detained the plaintiff because she had provided identification that matched the name, birth date, age, and sex of an individual wanted pursuant to a lawful arrest warrant. *Chapman*, 192 Fed. Appx. At 922-923.  However, there were some discrepancies in the description of the suspect, which included a one inch difference in height and a forty pound difference in weight.  The one glaring inconsistency was that the plaintiff in *Chapman* was *white* and the individual wanted in connection with the arrest warrant was *black*. *Id*.  In *Chapman*, the Eleventh Circuit affirmed summary judgment in favor of the defendants.

The Plaintiff's arrest was objectionably reasonable in light of the facts and circumstances.  Any discrepancies in the description of the suspects did not dissipate the probable cause that existed for Plaintiff's arrest.   Under the undisputed facts and circumstances of this case, it was objectively reasonable for Detective Matos to believe that the Plaintiff had committed the crime of robbery. Where Detective Matos did not provide any knowingly false statements or material omissions in support of the Juvenile Pick-up Order, he cannot be held liable to Plaintiff pursuant to 42 U.S.C.§ 1983.  This is especially true where, as here, even if the complained of omissions were included in the

there would still be probable cause for the arrest.  Therefore, Detective Matos is entitled to qualified immunity as a matter of law.

## **CONCLUSION**

The undisputed material facts unequivocally establish that Detective Matos is entitled to qualified immunity. The Juvenile Pick-up Order for Plaintiff's arrest was supported by probable cause.  Furthermore, Detective Matos did not make any knowingly false statements or material omissions to obtain the Juvenile Pick-up Order.  Even of the complained of omissions were included it would not dissipate the probable cause that existed for Plaintiff's arrest.

WHEREFORE based on the above-stated arguments and cited legal authority, Detective Matos respectfully moves this Honorable Court to enter its Order granting him summary judgment as a matter of law.

- intentionally left blank -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy hereof has been electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to: William J. Sheppard, Esq., D. Gray Thomas, Esq., Matthew R. Kachergus, Esq., and Bryan DeMaggio, Esq., Sheppard, Attorneys for Plaintiff, White, Thomas & Kachergus, P.A., 215 Washington Street, Jacksonville, FL 32202; and Barbara C. Fromm, Esq., Jolly & Peterson, P.A., Post Office Box 37400, Tallahassee, FL 32315, this 31st day of March 2011.

/s/ Bruce R. Bogan
Bruce R. Bogan, Esq.
Fla. Bar No. 599565
Deborah I. Mitchell
Fla. Bar. No. 806781
Hilyard, Bogan, & Palmer, P.A.
105 E. Robinson St., Suite 201
Orlando, FL 32801
Telephone (407) 425-4251
Facsimile (407) 841-8431
bbogan@hilyardlawfirm.com
dmitchell@hilyardlawfirm.com
Attorney for Defendant – Danilo Matos