UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**KIRHY SMITH,**

    **Plaintiff,**

vs.                                                             Case No.: 3:10-cv-578-J-32MCR

**RICK BESELER, in his official capacity as
Sheriff of Clay County, Florida;
DANILO MATOS, in his individual capacity,**

    **Defendants.**

_____

### PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS MATOS AND SHERIFF BESELER'S MOTIONS FOR SUMMARY JUDGMENT

    Defendants Matos and Sheriff Beseler's motions for summary judgment (Doc. 15 and 17) should be denied.  There exists genuine issues of material fact from which a jury can conclude that Defendants Matos and Beseler violated the clearly established constitutional rights of Plaintiff.  Specifically, viewing the evidence in the light most favorable to Plaintiff, Defendant Matos obtained a warrant for Plaintiff's arrest based on material omissions and arrested Plaintiff without probable cause or even arguable probable cause.  Further, Defendant Sheriff Beseler's failure to train his deputies regarding *Franks v. Delaware* and its progeny was the moving force behind the deprivation of Plaintiff's constitutional rights.  Finally, Sheriff Beseler is liable for the false imprisonment of Plaintiff under Florida state law.  Accordingly, Defendants' motions for summary judgment should be denied.

**I.**     **Facts**

    This case arises out of the robbery of an individual named Ryan Maynard in Orange Park, Florida in August 2008.  After Mr. Maynard was robbed, he contacted the Clay County Sheriff's

Office ("Sheriff's Office") and Deputy D. W. Llewellyn responded to meet Mr. Maynard. Mr. Maynard described his two assailants to Deputy Llewellyn as "white males, approximately 5-10, 165 lbs, both wearing black pants, & black hooded shirts...one suspect was wearing a blue bandana on his face and the other was wearing a red bandana on his face." Report of Deputy D. W. Llewellyn dated August 7, 2008 ("Llewellyn Report").

     Defendant Danilo Matos, a detective with the Sheriff's Office, was assigned to further investigate Mr. Maynard's robbery. Deposition of Danilo Matos taken February 23, 2011 ("Matos Depo.") at p. 25. The only information Defendant Matos received when beginning the investigation was a copy of Det. Llewellyn's report. *Id.* at 27. Defendant Matos then interviewed Mr. Maynard. *Id.* at 29-30. According to Defendant Matos, Maynard reiterated the same descriptions of the assailants that Maynard had conveyed to Deputy Llewellyn, except Maynard stated that one suspect was white and he could not recall the race of the second suspect at that time. *Id.* at 31-32. Defendant Matos documented Maynard's descriptions of the suspects in his report, which were as follows: Suspect No. 1: "white male, 5-10/5-11, thin build, dark short hair with freckles under his eyes. Wore black baggy jeans, black hooded sweatshirt, black suede sneakers and a red bandana under his nose." Suspect No.2: "Male, 5-10/5-11 with thin build. Wore similar clothing as suspect #1 and blue bandana under his nose." Supplemental Report of D. N. Matos dated August 20, 2008 ("Matos 8/20 Report") at p. 1. Despite Maynard's assertion that he couldn't recall the race of the second suspect, Defendant Matos did not confront Mr. Maynard with his earlier description given to Deputy Llewellyn that both assailants were <u>white</u> males. Matos Depo. at 32. Mr. Maynard did not mention the facial hair of either suspect during the interview with Detective Matos. *Id.* at 35.

Over two weeks later, on August 24, 2008, Defendant Matos was summoned to the Orange Park Operations Center regarding an individual that the Sheriff's Office had in custody. *Id.* at 36. This individual's name was Christopher Palmer. *Id.* at 37. Palmer was being investigated for auto burglaries in Orange Park. *Id.* at 38. During the investigation of Palmer, Palmer informed Sergeant Robbins, the officer investigating him, that Palmer knew about another robbery that had occurred in Orange Park. *Id.* at 38-39.

Defendant Matos interviewed Palmer and Palmer stated that he was witness to a robbery during the same time frame and location as the Maynard robbery. *Id.* at 39-40. Palmer's account of the robbery was that there were two suspects: (1) a white male, 6'1" tall, with a medium build, brown hair with low side burns, beard and goatee, wearing a black short sleeved t-shirt, blue baggy jeans, a white bandana tied around his neck, and a black ball cap; (2) a black male, 5'10" with a medium, muscular build, wearing a red cap, black thermal long sleeve shirt, long baggy blue jean shorts, and a black bandana tied around his neck. Supplemental Report of D. N. Matos dated September 30, 2008 ("Matos 8/30 Report") at p. 1. Palmer then went on to identify the black suspect as Plaintiff Kirhy Smith. *Id*. He also stated the other suspect's name was "Shocker." *Id.*[1] Given Palmer's familiarity with the circumstances of the crime, Matos suspected that Palmer may have been involved with the robbery himself. Matos Depo. at 49-50. Also, Palmer is a white male, 5'11" tall, 130 pounds, with short dark hair. *See* Clay County Sheriff's Office Incident/ Investigation Report Case #2008-027694. Matos then retrieved a

---

[1] Coincidentally, on August 20, 2008, prior to meeting with Defendant Matos, Palmer was questioned by the Sheriff's Office in reference to a suspicious activity report. *See* Clay County Sheriff's Office Field Contact Report Case #2008-027347. The officer that questioned Palmer included in his report the fact that Palmer was riding a red/black "Next *Shocker*" bicycle. *Id.* (emphasis added).

picture of Kirhy Smith and showed it to Palmer for verification. Matos Depo. at 69. Palmer identified Mr. Smith in the photo and stated that he went to high school with Mr. Smith.[2] *Id.* at 43. Palmer was released on his own recognizance the next day. *See* Clay County Sheriff's Office Releasing Checklist for Christopher Palmer dated August 25, 2008.

After speaking with Palmer, about a month later, Defendant Matos met with his supervisor, Sergeant Jett, and spoke about his interview of Palmer. *Id.* at 51. However, at no time during his conversation with Sergeant Jett did Defendant Matos ever mention the prior report of Deputy Llewellyn in which Maynard stated that the two suspects were <u>white</u> males. *Id.* at 52. Defendant Matos then approached an assistant state attorney about securing a warrant for Mr. Smith's arrest.[3] *Id.* at 58-59. Similar to his discussions with Sergeant Jett, Defendant Matos did not mention Deputy Llewellyn's report or Maynard's prior descriptions of two <u>white</u> males to the assistant state attorney. *Id.* at 61.

Defendant Matos also brought a pre-prepared affidavit in support of the warrant for the assistant state attorney to review. *Id.* at 63. This affidavit failed to mention that Maynard had described the two suspects as <u>white</u> males. *Id.* at 65; *See also*, Affidavit of Matos in Support of Juvenile Pickup Order dated September 25, 2010 ("Warrant Affidavit."). Further, during his discussions with Jett and the assistant state attorney, as well as in his warrant affidavit, Defendant Matos also failed to include other discrepancies in the description given by Maynard

---

[2]It should be noted that Mr. Smith was a high school football star and received publicity in many publications relating to his football achievements. Deposition of Kirhy Smith taken February 10, 2011 ("Smith Depo.") at p. 27. Mr. Smith vehemently denies knowing Palmer. Matos Depo. at 99.

[3]As Mr. Smith was a juvenile, Matos sought a "Juvenile Pickup Order." However, such an order is the equivalent of an arrest warrant for an adult and "warrant" will be used hereafter for brevity's sake.

and that of Palmer, specifically the color of pants the assailants were wearing, the color of the bandanas they were wearing, the type of shirts they were wearing, and the height and weight differences. Matos Depo. at 66-67; Warrant Affidavit.

Nonetheless, Defendant Matos took this affidavit, *sans* discrepancies, to Judge Collins for the warrant. *Id.* at 64; Warrant Affidavit. Defendant Matos did not mention any of the discrepancies to Judge Collins either. *Id.* at 70. Judge Collins issued the warrant for Mr. Smith's arrest. *Id.* at 72. Armed with that warrant, Defendant Matos went to Mr. Smith's high school in Jacksonville, Florida accompanied by two other Clay County officers. *Id.* at 76. After meeting up with two school resource officers at the school, the warrant was executed. *Id.* at 79-81. During the execution of the warrant, Mr. Smith was handcuffed in the school auditorium in front of hundreds of students taking FCAT exams. Smith Depo. 88-89. Mr. Smith was also forced to remove his football jersey as well. Matos Depo. at 87.

Defendant Matos claimed in his deposition that it was the school resource officers, members of the Jacksonville Sheriff's Office, who actually arrested Mr. Smith. *Id.* at 89-91. However, in one of his supplemental reports, Matos stated that the officers "retrieved" Mr. Smith from class and brought him to Defendant Matos. Supplemental Report of Matos dated October 24, 2008 ("Matos 10/24 Report") at p. 1. Matos went on in the same report to state that Mr. Smith "was arrested on the aforementioned Juvenile Pickup Order" after Matos had interviewed him at the Orange Park Operations Center. *Id*. at p. 2. *See also* Arrest Report of D. Matos dated October 10, 2008 ("Arrest Report").

Thereafter, Defendant Matos took Mr. Smith, while handcuffed, to the Orange Park Operations Center. Matos Depo. at 88. Once at the Operations Center, Defendant Matos grilled

5

and interrogated Mr. Smith over the course of a few hours. *Id.* at 98-99. During the course of this interrogation, Defendant Matos repeatedly cursed at Mr. Smith and accused him of lying. Smith Depo. at p. 123-124; Matos Depo. at p. 99-100. Mr. Smith denied any involvement in the crime whatsoever. Matos Depo. at p. 99. After that interrogation, per Defendant Matos' report, Mr. Smith was arrested pursuant to the pick up order and taken to the Duval County Juvenile Detention Center, where he remained five days before obtaining his release. Smith Depo. at 112-113. On January 10, 2009, the State of Florida dropped all charges against Mr. Smith. Disposition Notice in *State v. Smith*, dated January 10, 2009.

According to the training coordinator for the Clay County Sheriff's Office, Lieutenant Kenneth Stivers, there has not been any training provided to any of the deputies relating to the *Franks v. Delaware* or material omissions in affidavits in support of warrants. Deposition of Kenneth Stivers ("Stivers Depo.") at p. 16-17. Indeed, Matos has never even heard of *Franks*. Matos Depo. at 11-12.[4] Further, during the discovery period Plaintiff requested all training materials related to searches and seizures. *See* Plaintiff's First Request for Production to Defendant Sheriff Rick Beseler dated November 10, 2010, Request No. 3: ("Any and all documents regarding the nature and substance of any training, related to searched and seizures, including, but not limited to, applications for search and/or arrest warrants and juvenile pickup orders, given to members of the Clay County Sheriff's Office, from January 1, 2003 through present."). In response thereto, Defendant Beseler produced Powerpoint slides and case law updates provided to Clay County deputies. None of the materials provided to Plaintiff mentioned *Franks*. Stivers Depo. at p. 16.

---

[4]The court reporter incorrectly transcribed *Franks v. Delaware* as *Prince v. Delaware*.

**II.     Summary Judgment Standard**

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *See Mize v. Jefferson City Board of Education*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publishing Company*, 9 F.3d 913, 919 (11th Cir. 1993). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger v. Harrington*, 381 F.3d 1243, 1247 (11th Cir. 2004).

The party seeking summary judgment bears the initial burden of demonstrating to the court by reference to the record, that there are no genuine issues of material fact to be determined at trial. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotations marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, a court "must view all evidence and make all

reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (citing *Dibrell Brothers International, S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir. 1994).

### III. Argument

#### A. Defendant Matos' Motion for Summary Judgment

Mr. Smith asserts a claim under §1983 against Defendant Matos for a violation of Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. In his Motion for Summary Judgment, Defendant Matos argues that he is entitled to qualified immunity because there was arguable probable cause for the arrest of Mr. Smith. Doc. 15 at p. 2. To the contrary, taking the facts in the light most favorable to the Plaintiff there was a lack of arguable probable cause to arrest Mr. Smith and thus, Defendant Matos violated Mr. Smith's clearly established rights under the Fourth Amendment. Accordingly, Defendant Matos is not entitled to qualified immunity and his Motion for Summary Judgment should be denied.

##### i. Qualified Immunity

In order for Defendant Matos to claim protection of qualified immunity, he must first demonstrate that he was engaged in a discretionary duty. *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). The burden, then shifts, to the Plaintiff to show that qualified immunity is not appropriate by satisfying a two part inquiry. *Id*. First, viewing the evidence in the light most favorable to the Plaintiff, the Plaintiff must show that the officer violated a constitutional right. *Saucier v. Katz*, 533 194, 200 (2001). If such violation occurred, then the court must determine if that right was clearly established at the time of the incident. *Id*. The

district court may use its discretion to decide in which order to consider each prong based on the facts of the case. *Pearson v. Callahan*, 555 U.S. _____, 129 S. Ct. 808, 818 (2009).

The standard for determining whether a right is clearly established for purposes of qualified immunity is whether the right violated is one "about which a reasonable person would have known." *Goebert v. Lee County*, 510 F.3d 1312, 1330 (11th Cir. 2007). The Eleventh Circuit recognizes three sources of law that would put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction. *Id*. Ultimately, the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1306 (11th Cir. 2006).

Finally, the facts of the instant case need not be identical to another case in order to put defendants on notice that their conduct violated clearly established law. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). ("[G]eneral statements of law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.") (alteration in original) (internal quotation marks omitted)); *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1032 n.9 (11th Cir. 2001) (en banc) ("[P]re-existing case law, tied to the precise facts, is not in every situation essential to establish clearly the law applying to the circumstances facing a public official so that a reasonable official would be put on fair notice that the specific conduct would

9

be unlawful in the face of specific circumstances."). *See also Holloman v. Harland*, 370 F.3d 1252 1277 (11th Cir. 2004) (observing the Supreme Court "chastised" the Eleventh Circuit for taking an unwarrantedly narrow view of the factual similarity required to fall within clearly established law).

### ii. False Arrest

Mr. Smith's §1983 claim against Defendant Matos is based on the United States Supreme Court decision in *Franks v. Delaware*, 438 U.S. 154 (1978) and its progeny. In *Franks*, the Supreme Court held that a search warrant is void under the Fourth Amendment if the affidavit supporting the warrant contains "deliberate falsity or...reckless disregard" for the truth. *Id*. at 171. The reasoning in *Franks* also applies to information omitted from warrant affidavits. *Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997). Thus, a warrant affidavit violates the Fourth Amendment when it contains omissions "made intentionally or with reckless disregard for the accuracy of the affidavit." *Id*. at 1326-27 *quoting United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980).[5] Further, a party need not show by direct evidence that the affiant makes an omission recklessly. Rather, it is possible when the facts omitted from the affidavit are clearly critical to a finding of probable cause, that the fact of recklessness may be inferred from proof of the omission itself. *Madiwale*, 117 F.3d at 1327. Omissions that are not reckless, but are instead negligent, or insignificant or immaterial, will not invalidate a warrant. *Id*. Indeed, even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause. *Id*. Finally, the Eleventh Circuit has noted

---

[5]All cases from the former Fifth Circuit handed down by the close of business on September 30, 1981, are binding on the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

that an officer is not entitled to qualified immunity when an officer submits an affidavit for a warrant and the affidavit omits facts that are clearly material to probable cause determination. *Id.* at 1327; *see also Holmes v. Kucynda*, 321 F.3d 1069 (11th Cir. 2003).

Whether an item of information is material or not is, in the context of a motion for summary judgment, a mixed question of law in fact. *See, e.g., TSC Industries, Inc., v. Northway, Inc.*, 426 U.S. 438, 450 (1976). The legal component depends on whether the information is relevant to a given question in light of the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The factual component requires an inference as to whether the information would likely be given weight by a person considering that question. *TSC Industries*, 426 U.S. at 450.

In his Motion for Summary Judgment, Defendant Matos tries to characterize the discrepencies of Maynard's description of the suspects and the descriptions provided by Palmer as minor. The discrepancies as to the race, height, and weight of the suspects, which were omitted from the affidavit in support of the arrest warrant, can hardly be described as "minor inconsistencies."[6] Courts have held that height and weight discrepancies withheld from warrant affidavits are material to the consideration of probable cause. *See, e.g., Reese v. Garcia*, 115 F.Supp.2d 284, 293 (D. Conn. 2000) ("in particular, we find that Rivera's statements regarding the shooter's height and weight were relevant and should have been provided to the Superior Court Judge for his consideration in determining whether there was probable cause for Plaintiff's arrest."). Neither can the discrepancies between race, height, and weight, which were omitted

---

[6]Interestingly, Palmer fits the descriptions of the suspects given by Maynard, as Palmer is listed on an arrest report from the Clay County Sheriff's Office as a 5'11," 130 lb. white male.

from the affidavit in support of the warrant, be considered immaterial. *Id.*; *Bruning v. Pixler*, 949 F.2d 352, 359-60 (10th Cir. 1991) (denying qualified immunity on a *Franks* claim where the officer failed to include information in the arrest warrant affidavit regarding discrepancies in how the witness described the assailant's physical characteristics and the plaintiff's actual appearance); *Golino v. City of New Haven*, 950 F.2d 864, 867-68 (2d Cir. 1991) (denying qualified immunity on malicious prosecution claim where officer had omitted from his warrant affidavit conflicting eye witness descriptions, including those regarding weight and facial hair).

Additionally, there were further inconsistencies between Maynard's description of his assailants and those given by Palmer, which further highlight Defendant Matos' decision to omit the details regarding racial and physical discrepancies from his affidavit. Matos omitted discrepancies between the clothing the alleged assailants were wearing, which included different colors of pants (black v. blue); different colored bandanas (red and blue v. black and white); different styles of pants (pants v. shorts); and differences in how the bandanas were worn (under the nose v. around the neck).

Defendant Matos also omitted from his affidavit how he came into contact with Palmer, who was at the Operations Center, under investigation for crimes in the same area as that which the Maynard robbery took place. Similarly, Matos failed to include the fact that Palmer himself meets the description of the assailant given by Mr. Maynard. In fact, Palmer's account of the Maynard robbery caused Defendant Matos to suspect that Palmer was actually a part of the robbery. These omissions would clearly be relevant and material to the judge's probable cause determination had this information been included in the affidavit. *See, e.g., Reese,* 115 F.Supp.2d at 293 (holding that omitted information regarding witness' credibility would have

been relevant to a judge's evaluation of probable cause and that the "weight that the Superior Court Judge would have given the potential bias of these witnesses is a question that must be decided by the trier of fact."). In sum, its clear that the omissions made by Defendant Matos were material and that when considered, there was a lack of probable cause to arrest Mr. Smith.

Not only is the arrest warrant invalid for lack of probable cause when Matos' omissions are added to the affidavit, but there was a lack of arguable probable cause to arrest Mr. Smith in this case for Maynard's robbery altogether. An arresting officer is required to conduct a reasonable investigation to establish probable cause. *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). An officer may not "choose to ignore information that has been offered to him or her...[or] conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts...." *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004). Indeed, "[a] police officer may not choose to close his or her eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued especially when ...it is unclear whether a crime [has] even taken place." *See BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) (alterations added), *see also Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999) ("[O]fficers, in the process of determining whether probable cause exists, cannot simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone."). Although officers "need not conduct a 'mini-trial' before making an arrest,...probable cause does not exist when a 'minimal further investigation' would have exonerated the suspect." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) (internal citations omitted).

Taking the facts in the light most favorable to Plaintiff, a reasonable investigation would have revealed that Mr. Smith was not involved in the Maynard robbery. When Palmer indicated

13

that Mr. Smith was involved in the Maynard robbery, Defendant Matos obtained a picture of Mr. Smith and had Palmer identify the picture of Mr. Smith. The next "reasonable avenue of investigation" would have been to take a picture of Mr. Smith and/or photospread containing a picture of Mr. Smith out to Maynard for identification. Maynard was clearly willing to speak to police, as he had spoken to both Deputy Llewellyn and Defendant Matos prior. Furthermore, Defendant Matos' decision not to contact Maynard after the Palmer interview is further highlighted by the fact that Maynard had described the two suspects as <u>white</u> males and Mr. Smith is in fact **BLACK**. Rather than taking the next logical and reasonable step in his investigation, Defendant Matos "elect[ed] not to obtain easily discoverable facts[.]" *Kingsland*, 382 F.3d at 1229. Thus, "minimal further investigation" would have revealed that Mr. Smith was not in fact involved in the Maynard robbery, as Mr. Smith has testified to not participating in the robbery. Accordingly, Defendant Matos "did not avail himself of readily available information that would have clarified matters to the point that" Mr. Smith did not commit this crime. *Sevigny v. Dicksey*, 846 F.2d 953, 957 (4th Cir 1988).

Furthermore, Palmer fit the description of the assailants given by Mr. Maynard and even Defendant Matos himself questioned Palmer as to whether or not he was involved in the crime. Just as a reasonable investigation would have entailed Defendant Matos presenting Maynard with a picture of Mr. Smith, a reasonable investigation would have included a picture of Palmer being presented to Maynard, especially given Defendant Matos' suspicions regarding Palmer. In sum, taking the facts in the light most favorable to Mr. Smith, a reasonable investigation by Defendant Matos would have revealed there was a lack of probable cause to arrest Mr. Smith for the Maynard robbery. Accordingly, it is clear that Defendant Matos violated Mr. Smith's clearly

estalished rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

### B. Sheriff Beseler's Motion for Summary Judgment

As to the Sheriff's Office, Plaintiff asserts a cause of action for municipal liability under §1983 (Count II), as well as a state law claim for false imprisonment (Count III). For the reasons set forth below, Sheriff Beseler's Motion for Summary Judgment should be denied.

#### i. Section 1983 Municipal Liability

Defendant Sheriff Beseler provided no training regarding *Franks v. Delaware* and its progeny relating to false statements and material omissions in affidavits in support of arrest warrants. As a result, there is sufficient evidence from which a jury could find that the Defendant Sheriff Beseler's lack of training was the moving force behind the deprivation of Mr. Smith's constitutional rights. Accordingly, Defendant Sheriff Beseler is not entitled to summary judgment on Plaintiff's claim for his failure to adequately train his officers.

In certain situations, a law enforcement agency's failure to train its officers may constitute a "policy" upon which governmental liability may rest. *City of Canton v. Harris*, 489 U.S. 378 (1989). Such liability may be imposed for a single decision by policymakers under certain conditions. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 489 (1986). In *City of Canton v. Harris*, the Supreme Court of the United States held that "the inadequacy of police training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id*. at 388. The court further held that the municipality may only be held liable where the policies were the moving force [behind] the constitutional violation." *Id*. at 389. (citing *Polk County v. Dodson*,

15

454 U.S. 312, 326 (1981)). Moreover, for liability for inadequate training to attach the "identified deficiency in a city's training program must be closely related to the ultimate injury." *Id*. at 391.

In *Hurst v. Finley*, 857 F.Supp 1517, 1521-22 (M.D. Ala. 1994), the court found that the defendant police officer who arrested the plaintiff for driving under the influence of alcohol without having the plaintiff perform field sobriety tests to test the individual's motor skills could not have reasonably concluded that the plaintiff had been driving under the influence of alcohol and thus the defendant officer lacked probable cause for the arrest of the plaintiff for DUI. In addition to suing the individual officer that arrested the plaintiff, the plaintiff also brought an action against the municipality for whom the officer worked under §1983. *Id*. at 1519. Relevant to the municipal liability claim in *Hurst*:

> The City of Camp Hill, at the time of Hurst's arrest, had no policy regarding the way persons suspected of being under the influence of alcohol while driving should be treated or tested before being arrested. There was no requirement or policy that field sobriety tests be administered before arresting persons and charging them with driving under the influence of alcohol.

*Id*. at 1523. After noting the municipality's lack of policy and training, the court found:

> The court now finds that the City's failure to train its law enforcement personnel in the proper procedures to be followed when arresting an individual suspected of driving under the influence of alcohol was closely related to plaintiff Hurst's alleged injury, which was the deprivation of her Fourth Amendment right to be free of search and seizure without probable cause. Furthermore, the court finds that the City's lack of policy requiring that one or a battery of field sobriety tests be administered before placing a suspected driver under arrest was the motivating force behind the alleged violation of Hurst's Fourth Amendment right to be free from search and seizure in the absence of probable cause.

*Id*. The court then held the City was not entitled to summary judgment:

> As a result, the court finds that Hurst has submitted sufficient evidence from which a jury could find that the City of Camp Hill's policy in handling arrestees resulted in deliberate indifference to the constitutional rights of plaintiff Hurst. Therefore, the City of Camp Hill, Alabama is not entitled to summary judgment on the plaintiff's claim for failure to adequately train its police officers.

*Id*.

Similar to the municipality in *Hurst*, there was no policy or training provided by Defendant Sheriff Beseler relating to *Franks* and its progeny relating to material omissions in affidavits in support of arrest warrants. Beseler's failure to train his officers in proper procedures to be followed when seeking an arrest warrant was closely related to Mr. Smith's alleged injury, which was the deprivation of his Fourth Amendment right to be free from unreasonable searches and seizures. Further, like in *Hurst*, Defendant Sheriff Beseler's lack of training on this topic was the moving force behind the violation of Mr. Smith's Fourth Amendment right to be free from searches and seizures. Thus, as in *Hurst*, there is sufficient evidence from which a jury could find that Defendant Sheriff Beseler's lack of training resulted in deliberate indifference to the constitutional rights of Mr. Smith. Accordingly, Sheriff Beseler is not entitled to summary judgment.

### ii.    State Law False Imprisonment

In Count III of Plaintiff's Complaint, Plaintiff alleges a state law claim of false imprisonment against Defendant Sheriff Beseler. Defendant Beseler incorrectly argues that Plaintiff has failed to state a state law claim for false arrest because Plaintiff was arrested pursuant to a valid, judicially issued juvenile pick-up order. Doc. 17 at 20. While the general

rule is that an arrest made based on a facially valid warrant precludes a state law false arrest claim, there is an exception to this general rule where the warrant is obtained in violation of *Franks* and its progeny and then executed by the same officer who procured the warrant. *See Nixon v. Rutherford*, 2008 WL 321490, *1 (M.D. Fla. 2008); *Nguyen v. Carlysle*, 2007 WL 1560149, *4 (N.D. Fla. 2007).

In *Nixon v. Rutherford*, the Plaintiff brought a state law false imprisonment claim against Sheriff Rutherford, in his official capacity as the Sheriff of the City of Jacksonville, after the Plaintiff was arrested by one of Rutherford's officers. 2008 WL 321490,*1. The warrant was allegedly obtained based on false representations. *Id.* The same officer who obtained the warrant also executed it. *Id.* Similar to the Defendant Beseler in the instant case, Sheriff Rutherford argued that the officer was entitled to accept the warrant as lawful because it was facially valid. The court disagreed finding that because the officer who obtained the warrant based upon allegedly false representations was the same officer that executed the warrant "she [was] not in the same position as an officer who was entitled to rely on its facial validity." *Id.* Thus the court held that the plaintiff stated a cause of action for state law false imprisonment. *Id.*

Sheriff Beseler makes identical arguments to those made by Sheriff Rutherford in *Nixon*. Like the officer at issue in *Nixon*, Defendant Matos in the instant case, as set forth above, obtained the warrant for Mr. Smith's arrest in violation of *Franks* and its progeny. Furthermore, like the officer in *Nixon*, Defendant Matos, the same officer who procured the warrant, also executed the warrant as to Mr. Smith's arrest as well. Accordingly, just as the court in *Nixon* held that there was a cause of action under Florida state law for false imprisonment under the same circumstances, such a claim is present in the instant case and Defendant Beseler's Motion

for Summary Judgment on the state law claim for false imprisonment must be denied.

## IV.     Conclusion

In light of the foregoing, Defendants Matos and Sheriff Beseler are not entitled to summary judgment and their respective motions for summary judgment should be denied.

Respectfully submitted,


   */s/ Bryan E. DeMaggio*
Wm. J. Sheppard, Esquire
Florida Bar No.:  109154
D. Gray Thomas, Esquire
Florida Bar No.:  956041
Matthew R. Kachergus, Esquire
Florida Bar No.:  503282
Bryan E. DeMaggio, Esquire
Florida Bar No.: 55712
Sheppard, White, Thomas & Kachergus, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:     (904) 356-9661
Facsimile:     (904) 356-9667
Email:         sheplaw@att.net
COUNSEL FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 18, 2011, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF System which will send a notice of electronic filing to the following:

| | |
|---|---|
| **Barbara Fromm, Esquire** | **Bruce Bogan, Esquire** |
| **Jolly & Peterson, P.A.** | **Hilyard, Bogan & Palmer, P.A.** |
| **Post Office Box 37400** | **105 E. Robinson Street, Suite 201** |
| **Tallahassee, Florida 32315** | **Orlando, Florida 32802** |
| **Counsel for Defendant Sheriff Beseler** | **Counsel for Defendant Matos** |

I HEREBY CERTIFY that on April 18, 2011, a true and correct copy of the foregoing document and the notice of electronic filing was sent by United States Mail to the following non-CM/ECF participants:

N/A

                                            */s/ Bryan E. DeMaggio*
                                            ATTORNEY

jrd[smith, k - resp to msj]